Baird, Appellee, *v.* The Cincinnati Transit Co., Appellant.*

(No. 8545—Decided July 15, 1959.)

*Mr. Frank J. Longano* and *Mr. John A. Kiely,* for appellee.
*Mr. C. R. Beirne,* for appellant.

Hunsicker, J. On October 20, 1953, Ralph Baird, an employee in the highway department of the city of Cincinnati, was engaged in operating a line marker north on the west side of Reading Road in that city. Reading Road, at the point of the occurrence herein, is a six-lane highway, with three lanes on each side of the center markers. His then task was to run a white line, about four inches wide, a fixed distance from the center of Reading Road, in order to designate a lane of travel for vehicles using the roadway.

The line marker was a three-wheeled mechanical device that is propelled forward at a set speed by means of a small gasoline

*Motion to certify the record overruled, December 24, 1959.

engine. It is about 36 inches wide at its widest point, 67 inches from the front wheel to the back of the handles which the operator holds, and, at the handles, the highest point, it is 40 inches above the ground. This machine was described by Ralph Baird as being in the shape of a "B," with one wheel in front and two wheels in back.

As white paint was spread along the lane stripe, a fellow workman placed, over the lane, so painted, rubber cones about 18 inches in height, to designate to the drivers of vehicles the presence of a freshly-painted lane mark. These cones were placed in the highway, both in front of and in the rear of the lane marker, at 15- to 18-foot intervals. Those in front were placed far enough to the left of the cones so Ralph Baird, as he moved forward with the line marker, would miss them when he painted the line. The workmen in the rear would then immediately put these cones over the painted line.

A Cincinnati Transit Company bus, operated by one Wilson H. Cassell, was proceeding south on Reading Road at the same time Ralph Baird was painting the lane mark. Baird saw the bus, as it approached, move from a position near the curb of this three-lane side of Reading Road toward the center lane. A truck was parked at the curb about 150 feet ahead of Baird, and the bus moved into the lane nearest the center to avoid this truck. Baird said that, as it came toward him, he stepped back from the line marker, and then, when the front of the bus had passed his machine, he moved toward the line marker and grasped the handles. As he took hold of the handles, he said that the bus turned, causing the rear right wheel of the bus to strike the right rear wheel of the line marker. The handles were violently turned, striking his arm, and a portion of this marker hit him in the back of the legs, twisting him around but not forcing him to the ground.

Baird said that, when he twisted around, as a result of the bus striking his line marker, he felt a "pop" in his back, but that he continued to work that day, although by evening he had great pain in the lower portion of his back. The bus driver proceeded forward after this occurrence 150 to 200 feet until told by a passenger that he had struck the line marker. There was very little damage to the bus, but the line marker had a wheel broken off as a result of this encounter.

Baird worked intermittently the following month. He went to a doctor recommended by the city authorities. He was absent from work some days by reason of the pain in his back, but later was assigned to light work in a city warehouse, where, on November 19, 1953, he again felt a "pop" in his back when he helped move some metal sheets that had fallen onto a fellow employee. Thereafter, Baird continued to suffer pain and discomfort in his back, and as a result employed physicians and surgeons to attend him. Operative procedures were recommended, and from such ministrations Baird, after two surgical operations (one for a plexus of veins in the lower spine, and the other for a removal of a ruptured intervertebral disc and fusion of the spine in the sacral region), has been relieved of the pain, but is suffering a partial permanent disability to the extent of twenty-five per cent.

Baird, in addition to his testimony of injury on October 20, 1953, and November 19, 1953, also testified to an automobile collision in 1945, while driving an automobile in Kentucky. Baird testified that the physical result to him of this crash was injury to his knees, legs, chest, arms, hands and teeth, and, later, loss of consciousness.

In the trial of the instant action in the Court of Common Pleas, counsel for the appellant transit company interrogated Baird at great length concerning the injuries sustained in 1945, and also the occurrence at the city warehouse on November 19, 1953.

The doctors who attended Baird, in their testimony, gave, as the history of injury told to them by Baird, only a statement of the accident on Reading Road, or the October 20, 1953, occurrence. These doctors either did not know of, or did not take into account, anything which occurred prior to or subsequent to the affair of October 20, 1953. Counsel for the appellant transit company did not interrogate these doctors concerning the other accidents in which Baird was involved, although he knew about them at the time he cross-examined the doctors who treated Baird.

Medical experts were called to testify for the transit company. These medical experts were given the complete history of the various occurrences involving Baird, where physical in-

jury resulted. These medical experts also had available to them various x-ray photographs of Baird's spine. The conclusion reached, by these doctors who testified for the transit company, was that the proximate cause of his condition could not definitely be attributed to the injury received October 20, 1953.

One of these doctors who testified at the request of the transit company, a Doctor Nicholas J. Giannestras, did say at one point in his testimony that "The initial onset being due to the accident [October 20, 1953] and subsequently reaggravated at work [November 19, 1953]." Later he said, when asked which injury produced the result:

"Either one could have produced the initial damage, or the initial damage was produced at the first accident and aggravated by the second."

The trial resulted in a verdict and judgment rendered thereon for Baird. It is from this judgment that an appeal is perfected to this court by the transit company, which says:

"1. The court erred in overruling the motion of the appellant for a directed verdict at the close of all the evidence.

"2. The court erred in overruling the motion of the appellant for a judgment, notwithstanding the verdict and the judgment theretofore entered in favor of the plaintiff for $30,000.

"3. The court erred in overruling the motion of the appellant for a new trial.

"4. The court erred in refusing to submit the issue of assumption of risk to the jury.

"5. The court erred in refusing to give certain special charges requested by the appellant.

"6. The court erred in its general charge to the jury.

"7. The court erred in admitting certain testimony over the objection of the appellant.

"8. The court erred in refusing to admit evidence offered by the appellant.

"9. The court erred in refusing to permit the defendant to file an amended answer including the defense of assumption of the risk.

"10. The verdict and judgment was contrary to the weight of the evidence both as to the amount thereof and as to the fact that said verdict and judgment are in favor of the plaintiff.

"11. For other errors apparent in the record."

We have examined each of the several assignments of error, and find none prejudicial to the substantial rights of the appellant, although we believe it will be helpful to discuss one phase of this case.

We have herein a situation where one group of doctors, those testifying in behalf of Baird, did not consider, or were not informed of, the other occurrences involving physical injury to Baird. Does this fact make their testimony incompetent, or does it only affect the weight to be given their testimony? Why these doctors were not cross-examined concerning a possible change of opinion because of these other physical conditions, is not for this court to concern itself, except as it might be a waiver of any present claims involving the claimed admission of incompetent testimony.

Was the testimony of the physicians and surgeons, who attended Baird, rendered incompetent by reason of their failure to take into account the injuries to Baird prior to and also subsequent to October 20, 1953? The testimony of these doctors, especially one Doctor Ralph G. Corothers, was to the effect that the injury received October 20, 1953, was the cause of the physical condition of Baird, as seen by the doctor on December 10, 1953, the date when Baird first consulted this doctor.

It has long been a rule of evidence in this state that opinions respecting causation of a physical condition may be elicited from medical experts. This opinion evidence may be given either from a personal knowledge of the facts, or from a hypothesis upon which the medical witness is asked to state an opinion. *Burens* v. *Industrial Comm.*, 162 Ohio St., 549, 124 N. E. (2d), 724; *Shepherd* v. *Midland Mutual Life Ins. Co.*, 152 Ohio St., 6, 87 N. E. (2d), 156; *Cincinnati Traction Co.* v. *McKim*, 13 Ohio App., 108.

The testimony of an attending physician might at first glance appear to have more weight than a physician who only has recited to him a group of assumed facts; yet, where that attending physician does not have a complete history from his patient, that fact can be elicited on cross-examination and destroy the effectiveness of the testimony. This situation was pointed out in the early case of *Bellefontaine & Indiana Rd. Co.* v. *Bailey*, 11 Ohio St., 333, at page 337, where the court said:

"* * * If an expert may give his opinion on facts testified to by others, we see no reason why he may not do so on facts presumably within his own personal knowledge; and if his knowledge of any material fact be wanting or defective, the parties have ample opportunity to show it by cross-examination, and by testimony *aliunde*. A physician or surgeon, called on to give an opinion as to the state of health, or the cause of the death of any person, and having no personal knowledge of that person's symptoms, must of necessity testify hypothetically from assumed or supposed symptoms; but surely the attending physician or surgeon of the patient, having himself the best opportunity of personally knowing his symptoms and condition, is not, in the first instance presumed to be under any such necessity. * * *"

We think the situation which confronted the parties in the case immediately above cited is apparent here. The attending physicians testified to the extent of the knowledge possessed by them as to the injuries sustained by Baird. They could have been cross-examined relative to a possible change of opinion after being told of the prior and subsequent injuries, for the primary purpose of cross-examination is to test the accuracy, truthfulness, soundness, and thereby the credibility, of testimony given by a witness on direct examination. *Martin* v. *Elden*, 32 Ohio St., 282, at page 287.

The fact that the questions directed to the physicians who treated Baird did not contain a complete recitation of all the facts which counsel for the appellant deemed necessary to a full examination of the experts called by the transit company, should not render incompetent the answers elicited by the questions propounded. The principal question is, Did the question, as asked, contain facts which were in evidence, either by recitation as to what the attending physician found, or by a statement of the facts in evidence, plus the facts discovered upon personal examination of the patient?

In 2 Jones on Evidence (Fifth Ed.), Section 416, at page 784, the author, citing many authorities, states the rule above discussed as follows:

"But a question is not necessarily to be rejected by the court although some of the facts assumed by counsel to be true

are in dispute, or although the question does not state the facts as they actually exist. The facts are generally in dispute; and it is sufficient if the question fairly states such facts as the proof of the examiner fairly tends to establish, and fairly presents his claim or theory. Nor should a question be rejected because it does not include all the facts, or is based upon the testimony of only a part of the witnesses, unless it thereby fails to present the case fairly.''

We conclude, therefore, that the testimony of the attending physicians who gave evidence to substantiate all of the claims of physical injury which Baird says he suffered, was properly received. Such evidence is competent, and the objection made can only apply to the weight which the jury gave to it.

We have examined all of the claimed errors, and find none prejudicial to the substantial rights of the appellant; therefore, the judgment must be affirmed.

*Judgment affirmed.*

Doyle, P. J., and Collier, J., concur.

Doyle, P. J., and Hunsicker, J., of the Ninth Appellate District, and Collier, J., of the Fourth Appellate District, sitting by designation in the First Appellate District.