[Cite as *Pytel v. Crenshaw*, 2013-Ohio-3552.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

JOHN M. PYTEL, INDIVIDUAL, et al.       :

      Plaintiff-Appellant       :       C.A. CASE NO.   25487

v.       :       T.C. NO.   11CV6264

MICHAEL R. CRENSHAW       :       (Civil appeal from
                                    Common Pleas Court)

      Defendant-Appellee       :

                                           :

         . . . . . . . . . .

**O P I N I O N**

Rendered on the 16th day of August, 2013.

         . . . . . . . . . .

THOMAS J. INTILI, Atty. Reg. No. 0036843, 130 W. Second Street, Suite 310, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellant

STEVEN O. DEAN, Atty. Reg. No. 0009095, 130 W. Second Street, Suite 1500, Dayton, Ohio 45402
      Attorney for Defendant-Appellee

         . . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**    Plaintiff-appellant John M. Pytel appeals a judgment of the Montgomery

Court of Common Pleas, Civil Division, in favor of defendant-appellee Michael R. Crenshaw after a trial held on July 17 and 18, 2012. On August 13, 2012, Pytel filed a motion for judgment notwithstanding the verdict (JNOV), or in the alternative, for a new trial. The trial court overruled both of Pytel's post-trial motions in a decision issued on October 24, 2012. On the same day, the trial court issued a final judgment for Crenshaw. Pytel filed a timely notice of appeal with this Court on November 20, 2012. The incident which forms the basis for the instant appeal occurred on October 13, 2008, when the parties were involved in an automobile collision at the corner of Anderson Street and Stewart Street in Dayton, Ohio, at approximately 4:30 p.m. Crenshaw admitted that he failed to yield the right-of-way and pulled out in front of Pytel, causing the collision.

{¶ 2} After the accident, Pytel approached Crenshaw's vehicle and asked him if he was hurt. Crenshaw stated that both he and his passenger were not hurt. Crenshaw asked if Pytel was okay. Pytel stated that both he and his son, C., who was also in the vehicle, were not hurt. Both parties then moved their vehicles off of the roadway and waited for police and paramedics to arrive.

{¶ 3} Dayton paramedics transported C. to Children's Medical Center, where he was treated and released.[1] After C. was released, Pytel went to the emergency room at Good Samaritan Hospital complaining of head, neck, and back pain. Pytel was diagnosed as having tenderness in the cervical and thoracic-lumbar area of his back, as well as a small abrasion on his left parietal scalp. The results from the diagnostic testing that was done

---

[1]Any claims regarding C.'s injuries were settled by the parties prior to trial and are not at issue in the instant appeal.

were negative, and Pytel's condition was found to be objectively normal. Pytel was discharged with prescriptions for Naprosyn, an anti-inflammatory medication, and Ultram, a mild pain reliever. Pytel was also instructed to intermittently apply ice packs to his back followed by heat for approximately twenty-four hours.

{¶ 4} Two days later on October 15, 2008, Pytel went to the emergency room at Kettering Medical Center complaining of head, neck, back, and abdominal pain. Other than noting that Pytel had a bruise on the left side of his head and knee abrasions, the emergency room physician failed to find any evidence of neck or back pain. Noting Pytel's history of anxiety and depression, the treating physician prescribed Lexapro and Xanax for Pytel and discharged him.

{¶ 5} On October 16, 2008, Pytel visited Dr. David Kirkwood, M.D., his primary care physician, complaining of soreness in his neck, back, and head. Dr. Kirkwood noted that Pytel complained of tenderness in his neck and back and exhibited slightly less than full range of motion in his neck. Other than Pytel's complaints of tenderness, Dr. Kirkwood testified that he found no objective indications of injury to Pytel's neck, back, and head. Dr. Kirkwood prescribed Motrin and Vicodin to Pytel and instructed him to return for a follow-up visit in two weeks. Pytel returned to Dr. Kirkwood's office approximately two weeks later on October 27, 2008, still complaining of tenderness in his neck and back, but Dr. Kirkwood was still unable to discern any objective indications of injury to Pytel, other than the abrasion to his scalp. Nevertheless, Dr. Kirkwood opined that the accident which occurred on October 13, 2008, was the proximate cause of Pytel's injuries.

{¶ 6} On October 17, 2008, Pytel began treatment with Dr. David Heuser at Dixie

Chiropractic, for pain in his neck, back, and left leg, as well as headache and numbness. Dr. Heuser diagnosed Pytel with cervical and lumbar sprain with a left shoulder sprain due to the automobile accident that occurred on October 13, 2008. Between October 17, 2008, and December 3, 2008, Pytel underwent nine chiropractic treatments under the care of Dr. Heuser.

{¶ 7} We note that on September 11, 2008, approximately one month before the accident, the record establishes that Pytel went to the emergency room at Grandview Hospital complaining of shoulder, back, and neck pain he suffered as a result of stepping in a hole a few days prior. In particular, the treating physician found significant spasm in the area of the trapezius and scapula. Dr. Kirkwood testified that these findings were consistent with the findings made by the chiropractor following the motor vehicle accident with Crenshaw. The additional findings made by Dr. Heuser were not consistent with the findings made by Dr. Kirkwood and the emergency room physicians immediately after the car accident. Dr. Kirkwood acknowledged this discrepancy during his cross-examination.

{¶ 8} On August 31, 2011, Pytel filed a complaint against Crenshaw seeking damages for injuries he purportedly sustained in the automobile accident.[2] Crenshaw filed an answer to the complaint on September 13, 2011. A trial was held on July 17 and 18, 2012, after which the jury returned a verdict in favor of Crenshaw. Pytel was not awarded any damages. Specifically, while Crenshaw admitted responsibility for causing the accident on October 13, 2008, the jury found that the accident was not the proximate cause of any injuries of which Pytel complained.

---

[2]The instant case is a re-filing of Case No. 2009 CV 4874 which was voluntarily dismissed without prejudice on September 1, 2010.

Pytel subsequently filed a motion for JNOV, or in the alternative, a motion for new trial. The trial court overruled Pytel's post-trial motions on October 24, 2012.

{¶ 9} It is from this judgment that Pytel now appeals.

{¶ 10} Because they are interrelated, we will discuss Pytel's first and second assignments of error together as follows:

{¶ 11} "THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT."

{¶ 12} "THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR NEW TRIAL."

{¶ 13} **A) Motion for JNOV**

{¶ 14} In his first assignment, Pytel contends that the trial court erred when it overruled his motion for JNOV because the evidence adduced at trial was insufficient as a matter of law to support the jury's verdict that the automobile accident was not the proximate cause of Pytel's injuries. Specifically, Pytel argues that no evidence was adduced that refuted Dr. Kirkwood's testimony that appellant's emergency room treatment at Good Samaritan Hospital was necessary and that its billing was reasonable. Pytel further asserts that no evidence was adduced that refuted the necessity of his two office visits with Dr. Kirkwood or the reasonableness of the resultant billing. Lastly, Pytel argues that unrebutted evidence was adduced that he suffered *some* injury as a proximate result of the collision caused by Crenshaw.

{¶ 15} "A motion for judgment notwithstanding the verdict presents an issue of law. Though the court does not weigh the evidence or consider the credibility of the witnesses, the court must evaluate the evidence for its sufficiency in relation to the legal standard governing the

claim or defense which the motion involves. Furthermore, being a finding as a matter of law, the trial court's judgment granting or denying the motion is reviewed on appeal de novo." *Innovative Technologies Corporation v. Advanced Management Technology, Inc.*, 2d Dist. Montgomery No. 23819, 2011-Ohio-5544, citing *O'Day v. Webb*, 29 Ohio St.2d 215, 280 N.E.2d 896 (1972).

{¶ 16} "[T]he jury is not required to give any additional weight to the opinion of an expert, if any weight at all. Rather, an expert's opinion is admissible, as is any other testimony, to aid the trier of fact in arriving at a correct determination of the issues being litigated. Expert testimony is permitted to supplement the decision-making process of the fact finder not to supplant it." *McBride v. Quebe*, 2d Dist. Montgomery No. 21310, 2006-Ohio-5128, § 5, citing *Sawyer v. Duncan*, 8th Dist. Cuyahoga No. 78056, 2000 WL 1844758 (Dec. 14, 2000). Moreover, the lack of competing expert testimony does not automatically establish that the testimony from Pytel's expert, Dr. Kirkwood, was uncontroverted. The defense does not have to present its own expert, and may rely on cross-examination of the plaintiff's expert. *Pryor v. Tooson*, 2d Dist. Clark No. 2002-CA-91, 2003-Ohio-2402, ¶ 25.

{¶ 17} Upon review, we conclude that Crenshaw adduced sufficient evidence during trial to discredit Pytel's claim that he suffered injury as a result of the accident. A reasonable jury could find that Pytel did not carry his burden of proof. The record reveals a lack of objective findings consistent with Pytel's claims. Pytel's primary witness was his family physician, Dr. Kirkwood. Dr. Kirkwood admitted that a complaint of tenderness has a very high subjective overlay because the physician is relying upon the patient to make the report of pain. In his testimony, Dr. Kirkwood acknowledged that there are objective physical findings that are

associated with strain and sprain injuries of the neck and back, which can include muscle spasm, weakness in an extremity, and diminished reflex. None of these findings were noted in the emergency room records. The emergency room records per Dr. Kirkwood further revealed that the neck was not in spasm, moved freely, and there was no restriction in the range of motion.

{¶ 18} Regarding the chiropractic care, the objective findings made by Dr. Heuser had previously been noted during Pytel's visit to Grandview Hospital's emergency room approximately one month before the car accident in September of 2008. Any additional findings made by Dr. Heuser regarding injury to Pytel were inconsistent with the findings made by Dr. Kirkwood and the emergency room physicians after the car accident. Dr. Kirkwood acknowledged this disparity during his cross-examination. We further note that all of the diagnostic tests performed on Pytel by Dr. Kirkwood and the emergency room personnel following the car accident failed to support the claims advanced by Pytel. The cross-examination of Dr. Kirkwood identified several significant issues which undermined the value of his opinion that Pytel's injuries were proximately caused by the car accident.

{¶ 19} Additionally, Pytel points to the abrasion on his head as evidence of injury caused by the car accident. The head abrasion, however, did not require any medical care, and the record establishes a question of fact as to whether Pytel hit his head in the car accident. Specifically, defense counsel established during Pytel's cross-examination that when he was deposed approximately two years after the car accident, he could not remember whether he hit his head when the collision occurred. At trial, however, Pytel was certain that he had hit his head during the accident. Pytel also notes the abrasions on his knees as evidence of injury but was unable to remember where or how he received the injuries to his knees.

{¶ 20} Absent evidence of an obvious cause and effect relationship, "the issue of proximate cause is ordinarily one for determination by the jury." *Ornella v. Robertson*, 14 Ohio St.2d 144, 151, 237 N.E.2d 140 (1968). We are unwilling to hold that the evidence in the instant case established a causal relationship that was so obvious in nature that the trial court erred by refusing to sustain Pytel's motion for JNOV. Significantly, no evidence in the record exists wherein Crenshaw concedes that Pytel suffered at least *some* injury as a result of the accident. Viewed in a light most favorable to Crenshaw and presuming any doubt in his favor, we cannot say that reasonable minds could come to but one conclusion on the issue of proximate cause. Thus, the trial court did not err by refusing to sustain Pytel's motion for JNOV.

{¶ 21} Pytel's first assignment of error is overruled.

{¶ 22} **B) Motion for New Trial**

{¶ 23} In his second assignment of error, Pytel argues that the trial court erred when it refused to sustain his motion for a new trial because inadequate damages were awarded. Specifically, Pytel asserts that the jury's award of zero damages was given under the influence of passion and/or prejudice pursuant to Civ. R. 59(A)(4). Thus, Pytel argues that the jury's verdict was not sustained by the weight of the evidence, and a new trial should be granted. Civ. R. 59(A)(6). Lastlly, Pytel argues that the verdict is contrary to law. Civ. R. 59(A)(7).

{¶ 24} Whether to grant or deny a motion for a new trial rests with the sound discretion of the trial court, and its judgment will not be disturbed absent an abuse of discretion. *Yungwirth v. McAvoy*, 32 Ohio St.2d 285, 291 N.E.2d 739 (1972). An abuse of discretion is shown when a decision is unreasonable; that is, when there is no sound reasoning process that would support the decision. *AAAA Enterprises v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990).

{¶ 25} "To support a finding of passion or prejudice under Civ.R. 59(A)(4), * * * [the movant] must demonstrate that 'the jury's assessment of the damages was so overwhelmingly disproportionate as to shock reasonable sensibilities.' * * * In assessing such a claim, a reviewing court should consider the amount of the verdict, whether the jury considered incompetent evidence, improper argument by counsel, or other improper conduct that can be said to have influenced the jury. * * * The granting of a new trial because the verdict is so [inadequate] as to be the result of passion or prejudice rests in the trial court's discretion." *Berge v. Columbus Community Cable Access*, 136 Ohio App.3d 281, 317, 736 N.E.2d 517 (10th Dist.1999). "The amount of the verdict alone will not sustain a finding of passion or prejudice. There must be something contained in the record which the complaining party can point to that wrongfully inflamed the sensibilities of the jury." *Shoemaker v. Crawford*, 78 Ohio App.3d 53, 65, 603 N.E.2d 1114 (10th Dist.1991).

{¶ 26} Other than the award of zero damages, Pytel fails to point to any evidence in the record which "wrongfully inflamed the sensibilities of the jury." The jury was not required in the instant case to award Pytel damages on his claims. Substantial, competent, and credible evidence was adduced at trial which supported the verdict in favor of Crenshaw. The jury was free to believe or disbelieve any part of lay witness or expert witness testimony offered by Pytel. Through effective cross-examination, defense counsel undermined the evidence presented by Pytel that he suffered some injury as a result of the car accident. There is simply nothing in the record to support Pytel's claim that the jury was affected by undue passion or prejudice in reaching its verdict.

{¶ 27} "Civ. R. 59(A)(6) authorizes the trial court to vacate a judgment and order a new

trial on a finding that the verdict on which the judgment was entered 'is not sustained by the weight of the evidence.' When that claim is made, the court must review the evidence and pass in a limited way on the credibility of the witnesses. (Internal citations omitted). It must appear to the court that a manifest injustice has been done and that the verdict is against the manifest weight of the evidence. For example, where it appears probable that a verdict is based on false testimony, a motion for a new trial should be granted. (Internal citations omitted). A verdict is not against the manifest weight of the evidence merely because the judge would have decided the case differently. (Internal citations omitted). If the jury's verdict is supported as to each element of the plaintiff's case by some competent and apparently credible evidence, a defendant's motion for new trial should not be granted. (Internal citations omitted). Conversely, if evidence the defendant offered to rebut one or more of those elements of the plaintiff's case is competent and apparently credible, a plaintiff's motion should not be granted." *Bedard v. Gardner,* 2d Dist. Montgomery No. 20430, 2005-Ohio-4196.

{¶ 28} The cases upon which Pytel relies to support his argument that proximate cause was established at trial involve either a concession of some kind by defense counsel on the issue of proximate cause or the defense was found to have presented no evidence to challenge the plaintiff's claims the defendant's negligence was the proximate cause of the injuries. See, *Hoschar v. Welton*, 7th Dist. Columbiana No. 06 CO 20, 2007-Ohio-7196, at ¶ 1 (agreeing the appellant was entitled to a new trial where "Appellee did not *** dispute or take issue with Appellant's emergency medical treatment, diagnoses, or transport arising from the collision"); *Enter v. Fettman*, 5th Dist. Stark No. 2005CA00023, 2005-Ohio-5525, at ¶ 70 (finding that competent credible evidence clearly demonstrated that appellant suffered some injuries as a result

of the accident and defense counsel made concessions during trial that appellant's neck and back injuries were caused by the collision); see also, *Gorney v. Naus*, 6th Dist. Lucas No. L-06-1223, 2007-Ohio-2827; *Palmer v. Hopkins*, 11th Dist. Ashtabula No. 2006-A-0020, 2007-Ohio-3026 (defendant admitted negligence in causing accident but denied that accident was proximate cause of plaintiff's injuries; trial court found that a new trial was warranted because defendant failed to offer any direct evidence which controverted plaintiff's argument that he suffered injuries as a result of the accident.)

{¶ 29} The instant case does not involve an instance where defense counsel conceded the issue of proximate cause or the plaintiff experienced an immediate injury at the scene requiring treatment. In fact, Crenshaw testified that immediately after the accident, Pytel stated that he was fine and not injured. The jury was instructed that Pytel had to prove Crenshaw's negligence was the proximate cause of Pytel's injuries. Significantly, the interrogatory presented to the jury specifically asked the jury to indicate a "yes" or "no" response to the following question: "Do you find that the negligence of defendant Michael Crenshaw directly and proximately caused injury to the plaintiff John Pytel?" Thus, the issue of proximate cause was contested at trial and placed squarely before the jury for their determination.

{¶ 30} Pytel's testimony contained numerous inconsistencies which were brought out during cross-examination. Specifically, Pytel had trouble recalling the sequence or occurrence of events when questioned during his deposition in 2010: to wit: a) whether he went to Children's Hospital to see his son; b) when he went to Good Samaritan after the accident; c) whether he actually hit his head during the accident; d) whether he had prior neck or back problems; and e) whether he had been treated at Grandview Hospital for the prior neck and back injuries one

month before the accident. At trial, however, Pytel was able to remember all of these events clearly. Pytel's testimony was also inconsistent regarding how he was referred to and began treatment at Dixie Chiropractic. Initially, he indicated that a physician referred him to Dr. Heuser. Pytel then testified that it was a female nurse who gave him a list of chiropractors from which he chose Dr. Heuser. Pytel later admitted that the same female hospital employee simply told him that he needed to see a chiropractor. Pytel finally acknowledged that he went to Dixie Chiropractic because the office was close to his house, and he had received a solicitation in the mail from the practice.

{¶ 31} The trial court fully recognized that the ultimate decision in this matter turned on the jurors' evaluation of the credibility of Pytel and Dr. Kirkwood's testimony. After thoroughly reviewing the entire record, weighing the evidence and all reasonable inferences, we cannot conclude that in resolving conflicts in the evidence, the jury lost its way and thereby created a manifest miscarriage of justice. The jury had the opportunity to see and hear all of the witnesses, and it was free to determine which testimony to credit. We defer to the jury's assessment of credibility. On this record, the jury could have simply discredited Dr. Kirkwood's testimony regarding causation because the facts on which his opinions were based were not established by the greater weight of the evidence, given the conflicting testimony of Pytel and that of Crenshaw. Given that there were objectively discernable facts in the record that brought the credibility of Pytel's claims into question, and that the jury was in the best position to assess credibility, I cannot conclude that the trial court abused its discretion by upholding the jury verdict awarding zero damages and denying Pytel's motion for a new trial.

{¶ 32} My colleagues conclude that the award of zero damages is against the manifest

weight since payment for the emergency room bills was not awarded. However, in my view, the jury was free to conclude that Pytel did not carry his burden of proving causation warranting two emergency room visits. Pytel's vehicle sustained minimal damage, he was traveling at a low rate of speed, 20-25 mph, and the tortfeasor's vehicle was more heavily damaged. This jury heard evidence of alternative causes for Pytel's claimed injuries and evidence was adduced that he was exaggerating his complaints for financial gain and/or drug-seeking reasons.

{¶ 33} Pytel's second assignment of error is overruled.

{¶ 34} All of Pytel's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, P.J., dissenting:

{¶ 35} I concur in the overruling of Pytel's First Assignment of Error. Upon this record, I conclude that Pytel is not entitled to judgment in his favor as a matter of law.

{¶ 36} On the Second Assignment of Error, I agree with Judge Hall that the jury's verdict that Pytel should not recover even the charges he incurred for his visit to the Good Samaritan emergency room following the collision is against the manifest weight of the evidence. A case can be hypothesized involving a low-velocity "bump" of one motor vehicle against another in which a reasonable finder of fact could conclude that a trip to an emergency room to check for possible injury would not have been a reasonable and prudent action necessitated by the collision. But in my view, the case before us is not that case. I have examined the photographs in evidence; the damage to Crenshaw's vehicle was substantial, and there was some, albeit modest, damage to Pytel's larger, more massive vehicle. Thus, the kinetic energy involved in

the collision was not neglible.

{¶ 37} Despite the fact that two members of the panel of judges of this court charged with deciding this case would find the judgment to be against the manifest weight of the evidence, we are not unanimous on this issue, and we must therefore affirm the judgment. "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." Article IV, Section 3(B)(4) of the Ohio Constitution. *See State v. Hudson*, Clark No. 2011 CA 100, 2013-Ohio-2351, ¶ 46, 58.

{¶ 38} Because we must affirm the judgment despite the fact that two of us conclude that it is against the manifest weight of the evidence, and because it has long been the custom of this court to have at least two judges sign a judgment entry, I join in signing our judgment entry of affirmance, despite my dissenting opinion.

. . . . . . . . . .

HALL, J., dissenting:

{¶ 39} The car collision in this case was a substantial crash as a result of the admitted negligence caused by the defendant's improper entry into an intersection in front of the plaintiff's vehicle which was not required to stop. Tow trucks had to be called. Within hours, the plaintiff reported to a hospital emergency room with a visible head abrasion and neck and back complaints. In my view the jury clearly "lost its way" when it awarded zero damages.

{¶ 40} Although the plaintiff's visit to a different hospital two days later, and his subsequent chiropractic treatment, could properly have been ignored by the jury due to the plaintiff's dubious credibility, the same is not true of the initial hospital visit. In my view, when one is involved in a substantial automobile collision the expense of reasonably prompt medical

attention, even if it is just to see if there are serious underlying injuries, is reasonably incurred.

{¶ 41}    On this record, I would find that the jury's conclusion was against the manifest weight of the evidence and would reverse the judgment and remand for a new trial.

. . . . . . . . . .

Copies mailed to:

Thomas J. Intili
Steven O. Dean
Hon. Timothy N. O'Connell