[Cite as *Warner v. DMAX Ltd., L.L.C.*, 2015-Ohio-4406.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

ANGELA M. WARNER        :

       :      Appellate Case No. 26644

       Plaintiff-Appellee        :

       :      Trial Court Case No. 2010-CV-7355

v.        :

       :      (Civil Appeal from

DMAX Ltd., LLC        :      Common Pleas Court)

       :

       Defendant-Appellant        :

       :

. . . . . . . . . . .

## O P I N I O N

Rendered on the 23rd day of October, 2015.

. . . . . . . . . .

GLORIA P. CASTRODALE, Atty. Reg. No. 0040597, 89 East Nationwide Boulevard, 2nd Floor, Columbus, Ohio 43215
       Attorney for Plaintiff-Appellee, Angela Warner

MIKE DeWINE, Attorney General of Ohio, by LISA MILLER, Assistant Attorney General, Workers' Compensation Section, 150 East Gay Street, 22nd Floor, Columbus, Ohio 43215-3130
       Attorneys for Defendant-Appellee, Bureau of Workers' Compensation

DAVID C. KORTE, Atty. Reg. No. 0019382, MICHELLE D. BACH, Atty. Reg. No. 0065313, and JOSHUA R. LOUNSBURY, Atty. Reg. No. 0078175, Coolidge Wall Co., L.P.A., 33 West First Street, Suite 600, Dayton, Ohio 45402
       Attorneys for Defendant-Appellant, DMAX Ltd., LLC

. . . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant DMAX Ltd., LLC, appeals from a judgment rendered in favor of plaintiff-appellee Angela Warner on her worker's compensation claim. DMAX contends that the trial court erred by failing to exclude the testimony of Warner's expert and by failing to grant its motion for a directed verdict on all claims. DMAX also contends that the trial court erred by not informing the jury of its decision to direct a verdict on the "occupational disease" claim. Finally, DMAX argues that the trial court erred by failing to sustain a motion for judgment notwithstanding the verdict or a new trial.

{¶ 2} Warner argues that her expert was qualified to give an opinion on the cause of her injuries and that this evidence was sufficient to defeat the motion for a directed verdict. Warner also argues that no error occurred when the court directed a verdict against her on one of her claims without explaining this directed verdict to the jury, because the jury instructions properly advised the jury of the sole issue before it. Warner contends that the trial court properly denied the motion for judgment notwithstanding the verdict or a new trial, because the verdict is supported by sufficient evidence.

{¶ 3} We conclude that there is evidence in the record from which a reasonable jury could find that Warner's injury was caused by her job duties at DMAX, consisting of the properly admitted testimony of Warner and her treating physician. We also conclude that the trial court did not abuse its discretion by not informing the jury of its decision to grant a partial directed verdict, because the jury instructions clearly informed the jury of the issues for it to decide, which did not include the dismissed claim. We conclude that

the trial court did not err in denying the motion for judgment notwithstanding the verdict or a new trial because there is sufficient evidence in the record to support the jury's verdict.

**{¶ 4}** Accordingly, the judgment of the trial court is Affirmed.

### I. Warner Suffers Shoulder Condition and Seeks
### Worker's Compensation Benefits

**{¶ 5}** Warner began her employment with General Motors in 1993, which was taken over by DMAX in 2001. DMAX manufactures Duramax diesel engines for General Motors, which are used in three-quarter and one ton pickup trucks. It is a high-tech facility utilizing robotics to create an automated engine assembly process. Warner began her employment working on the assembly line, and later transferred to the machining area, which included ten different machines. Five of the machines perform cutting operations; the others perform separate functions including snapping a part into the block, screwing a bolt into the block, washing the block and testing the block for leaks. The machines incorporate lift assists which allow guided operation, eliminating the need for heavy lifting. Warner acts as a floater, working on all ten machines in the machining area, assisting other employees with tool changes, trouble-shooting defaults, and filling in for other employees, as needed. Her tasks in the machining area were flexible and generally did not involve continuous repetitive movements.[1] Her area processed from 325 to 400 blocks per day, so the work was continuously flowing. A portion of her daily work duties involved raising her arm in an overhead movement, but none involved personally using

---

[1] The defense expert defined "repetitive" as tasks performed every 30 seconds.

excessive force. A portion of her work did involve lifting parts or tools from three to 25 pounds and occasionally pushing a motorized or electric cart for transporting parts. Warner's work hours vary, depending on the volume of sales, ranging from 8 to 11 hours per day and up to 6 days per week.

{¶ 6} Warner's claim was based on four medical conditions. It was not disputed that she suffered shoulder pain from right rotator cuff tendinitis, right rotator cuff bursitis, right shoulder impingement syndrome and a right shoulder supraspinatus partial thickness tear. Warner began experiencing shoulder pain in October 2009. She acknowledged that she did not experience a specific injury to her shoulder.

{¶ 7} The two doctors who testified expressed different opinions on the cause of Warner's condition. Dr. Wunder, the defense expert, testified that Warner's condition was an intrinsic degenerative condition, caused by a natural aging process. After Dr. Wunder examined Warner and issued his report, he visited the DMAX facility to view her working conditions, which confirmed his opinion that the condition was not caused by external forces at her workplace. Specifically, Dr. Wunder gave his opinion that none of Warner's four medical conditions were caused by 1) any traumatic injury while she was working at DMAX, 2) an injury that develops gradually over time as a result of the performance of job related duties, or 3) an occupational disease. The trial court agreed to redact a portion of Dr. Wunder's testimony and not allow the jury to hear his videotaped testimony regarding the claim based on occupational disease. This evidentiary ruling was based on the court's earlier decision to sustain the defense motion for a directed verdict on the claim based on occupational disease. The trial court denied the defense request to provide the jury with a cautionary instruction to explain the directed verdict ruling, even

though defense counsel had discussed the occupational disease theory in its opening statement to the jury. The trial court did explain to the jury that a portion of Dr. Wunder's testimony was being skipped because of her prior legal rulings.

**{¶ 8}** Dr. Saunders, the treating physician, testified on behalf of Warner, giving his opinion that the cause of Warner's condition was the push, pull and repetitive shoulder movements Warner used to perform her job at DMAX. Dr. Saunders did not visit Warner's workplace at DMAX, but based his opinion on the history provided by Warner regarding her job duties, his physical examination of Warner, and Warner's medical history.

**{¶ 9}** In its final instructions to the jury, the trial court provided this explanation about expert testimony:

Normally, a witness may not express an opinion; however, one who follows a profession or special line of work may express his opinion because of his education, knowledge and experience.

Such testimony is admitted for whatever assistance it may provide to help you arrive at a just verdict.

Questions have been asked in which expert witnesses were permitted to assume that certain facts were true and to give an opinion based on that assumption.

You must decide whether the assumed facts on which the experts base their opinions are true. If any assumed fact was not established by the greater weight of the evidence, you will decide the effect of that failure on the value of the opinions of the experts.

Questions have been asked of the expert witnesses after they had

disclosed the underlying facts or data. It is for you, the jury to decide if such facts or data on which they base their opinions are true and you will decide what weight to give such evidence.

As with other witnesses, on you alone rests the duty of deciding what weight to give the testimony of the experts. In deciding its weight, consider the skill, experience, knowledge, veracity, familiarity with the facts of this case, and the usual rules for testing credibility or believability in deciding weight to give to the testimony.

{¶ 10} In its final instructions to the jury, the trial court did not mention the "occupational disease" theory of the case. The court explained the legal basis of Warner's claim as follows:

An employee who sustains an injury in the course of and arising out of her employment is entitled to Worker's Compensation benefits.

It is the plaintiff's burden to prove by a preponderance of the evidence that the injury is indeed, work related. The law requires the plaintiff to prove the facts supporting her right to participate by a preponderance or the greater weight of the evidence.

This requirement is known as the burden of proof. The disputed issue of fact for your determination by a preponderance of the evidence is as follows: One, did the plaintiff, Angela M. Warner, sustain an injury described as right rotator cuff tendinitis, right rotator cuff bursitis, right shoulder impingement syndrome and/or right shoulder - - shoulder supraspinatus partial thickness tear as a result of her employment with

DMAX on November 3rd, 2009.

Injury includes any injury, whether caused by external accidental means or accidental in character and result received in the course of and arising out of the injured employ - - employee's employment.

An injury does not include an injury caused primarily by the natural deterioration of tissue and organ or a part of the body.

Injury includes physical harm that develops over time as the gradual result of the injured employee's work on job-related duties.

Plaintiff must prove that employment was the proximate cause of the injury. A proximate cause is something which in the natural and continuous sequence produces an injury and without which the result would not have occurred.

Transcript pgs. 346-348.

{¶ 11} After the instructions were given, but before the jury was sent to deliberate, the trial court asked both parties if they had any additions or corrections to the jury charge. Defense counsel did not object to any specific instruction given, but again asked the court to provide a cautionary instruction that the occupational disease theory was no longer part of the case. The trial court again denied the request, commenting that "to provide any further instructions about it would put undue influence in the jury's mind about the fact that it's not there." Transcript at pg. 360.

{¶ 12} The jury returned a verdict in favor of Warner, allowing her claims on three of the four conditions; right rotator cuff tendinitis, right rotator cuff bursitis, right shoulder

impingement syndrome. The jury found in favor of DMAX and against Warner on the condition of right shoulder supraspinatus partial thickness tear. The trial court entered judgment accordingly.   DMAX appeals.

## II. Dr. Saunders's Testimony Was Properly Admitted

{¶ 13}   For its First and Second Assignments of Error, DMAX asserts as follows:

THE TRIAL COURT ERRED WHEN IT FAILED TO EXCLUDE DR. SAUNDERS' UNRELIABLE TESTIMONY PURSUANT TO EVID. R. 702.

THE TRIAL COURT ERRED WHEN IT FAILED TO EXCLUDE DR. SAUNDERS' TESTIMONY BECAUSE HE DID NOT PROVIDE A LEGALLY SUFFICIENT CAUSAL RELATIONSHIP TO SUPPORT THE ALLOWANCE OF THE CLAIM AS A[N] INJURY PURSUANT TO VILLAGE V. GENERAL MOTORS, 15 Ohio St. 3d 129, 472 N.E.2d 1079 (1984)

{¶ 14}   "The determination of the admissibility of expert testimony is within the discretion of the trial court. Evid.R. 104(A). Such decisions will not be disturbed absent abuse of discretion." *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9.   "'Abuse of discretion' suggests unreasonableness, arbitrariness, or unconscionability. Without those elements, it is not the role of this court to substitute its judgment for that of the trial court." *Id.*, citing *Calderon v. Sharkey,* 70 Ohio St.2d 218, 222, 436 N.E.2d 1008 (1982).

{¶ 15} Pertinent to this appeal, Evid. R. 702 provides that a witness may testify as an expert if all of the following exist:

(A) The witness' testimony either relates to matters beyond the

knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶ 16} DMAX does not dispute that Dr. Saunders was qualified to testify as an expert; it contends that his testimony was unreliable and insufficient to prove causation. The qualification and reliability requirements of Evid.R. 702 are distinct. *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 17. However, this is not the type of case where the court must decide whether the expert's conclusion is based on scientifically valid principles and methods. *See, e.g., Kerns v. Hobart Bros. Co.,* 2d Dist. Miami No. 2007 CA 32, 2008-Ohio-2242. DMAX challenges the opinion of the

treating physician based on his limited knowledge of Warner's working conditions.

{¶ 17} While we agree that an expert opinion is unreliable if based on incorrect factual assumptions, we disagree that Dr. Saunders's testimony was unreliable. Evid.R. 705 provides that "[t]he expert may testify in terms of opinion or inference and give the expert's reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise." Under Evid.R. 703, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." "Where an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied." *State v. Soloman*, 59 Ohio St. 3d 124, 126, 570 N.E. 2d 1118 (1991). In the present case, Dr. Saunders was the treating physician, and he based his opinion on his records and what he perceived, which included his personal observations and his patient's description of her working environment. To arrive at a diagnosis, a physician may rely on facts derived from a patient's personal recitation of the patient's history, along with the physician's physical examination of the patient. *See, e.g., Hutchins v. Delco Chassis Systems*, 2d Dist. Montgomery No. 16659, 1998 WL 70511, *4 (Feb. 20, 1998). Under Evid. R. 803(4), statements for purposes of diagnosis or treatment are not considered inadmissible hearsay, since "[s]uch statements are deemed to be trustworthy and admissible because 'the effectiveness of the treatment depends upon the accuracy of information given to the physician [so] the declarant is motivated to tell the truth.'" *State v. Jones,* 2d Dist. Montgomery No. 26289, 2015-Ohio-4116, ¶ 71, quoting *State v. Brewer*, 6th Dist. Erie No. E-01-053, 2003-Ohio-3423, ¶ 28.

A treating physician, testifying as a medical expert, "could have been cross-examined relative to a possible change of opinion after being told of the prior and subsequent injuries [or different working conditions or duties], for the primary purpose of cross-examination is to test the accuracy, truthfulness, soundness, and thereby the credibility, of testimony given by a witness on direct examination." *Baird v. Cincinnati Transit Co.*, 110 Ohio App. 94, 99, 168 N.E.2d 413 (1st Dist.1959). *See also Blinn v. Balint*, 9th Dist. Summit No. 26733, 2014-Ohio-3114, ¶ 7.

{¶ 18} In the case before us, DMAX did challenge Dr. Saunders's testimony by a series of questions on cross-examination that revealed that he was not personally familiar with all of the working conditions at DMAX. The assertion that the underlying facts regarding work conditions relied upon by Dr. Saunders, who treated Warner, did not contain a complete recitation of all the facts that were available to the opposing expert, Dr. Wunder, does not render incompetent the opinion provided by Dr. Saunders. In the case before us, the difference in the two experts' underlying factual assumptions may affect credibility, but do not affect admissibility. Questions of credibility and the weight to be given to each expert is a question for the jury to decide. The record reveals that the jury was properly charged that it was their duty to decide what weight to give the testimony of the experts, which included a consideration of the accuracy of the facts assumed or relied upon by the experts.

{¶ 19} Similarly, we find that Dr. Saunders's testimony on causation was properly admitted. On direct examination, Dr. Saunders's testimony includes his expert opinion that Warner's injuries were "caused by the push, pull movements and repetitive movements used to perform her job at DMAX." Transcript pg. 158. Dr. Saunders

indicated that he based his opinion on "records and the physical exam." *Id.* Earlier he testified that Warner's statements about her work duties were included in her medical records. *Id.* at 146. On cross-examination, Dr. Saunders was asked, "Are you supporting the allowance of this claim as an occupational disease, meaning something that happened over a long period of time like you indicate, 17 years of work, in your letter?" *Id.* at 168. Dr. Saunders responded with, "I feel that repetitive work over a long period of time would cause her symptoms and condition, yes, if that's what you are asking." *Id.* at 168. Dr. Saunders was not asked, nor would he be expected to know, the differences between the legal definitions of occupational disease and gradual onset injuries, as defined in *Village.* During Dr. Wunder's direct examination, when referring to a possible *Village* claim, he was asked if Warner's conditions were caused by "an injury that develops gradually over time as a result of the performance of job related duties." *Id.* at 277. The jury was instructed that they could find in favor of Warner if she proved that she sustained an "injury" as a proximate result of her employment, and that "injury" included "physical harm that develops over time as the gradual result of the injured employee's work on job-related duties." It was within the province of the jury to decide that Warner met her burden of proving that her injury developed over time as the gradual result of her work-related duties with the testimony of her treating physician, Dr. Saunders, who testified that repetitive work over a long period of time caused her injuries. "Questions of proximate cause relating to the compensability of injuries in the area of workers' compensation are normally for the trier of fact." *Randall v. Mihm*, 84 Ohio App.3d 402, 407, 616 N.E.2d 1171 (2d Dist.1992).

{¶ 20} Dr. Saunders had sufficient information concerning Warner's working

conditions from which he could base his expert opinion that the injury was caused by those working conditions. Therefore, the First and Second Assignments of Error are Overruled.

### III. Sufficient Evidence Was Presented on Warner's Claim for Compensation Due to Gradual Onset Work-Related Injury

{¶ 21}  For its Third Assignment of Error, DMAX asserts as follows:

THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT DMAX'S MOTION FOR A DIRECTED VERDICT RELATIVE TO THE VILLAGE THEORY OF RECOVERY

{¶ 22} The Supreme Court of Ohio has held "that an injury which develops over time as the result of the performance of the injured worker's job-related duties is compensable under R.C. 4123.01(C)." *Village v. Gen. Motors Corp.*, 15 Ohio St.3d 129, 133, 472 N.E.2d 1079 (1984). R.C. 4123.01(C) defines "injury" for purposes of worker's compensation as "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."  "The Court in *Village* recognized that these types of claims, now typically called 'wear and tear,' '*Village*-type,' or 'gradual onset' injuries, fall under the definition of 'injury.'" *Brink v. Olson Cold Storage, Ltd.*, 3d Dist. Defiance No. 4-07-26, 2008-Ohio-1788, ¶ 18.  Since the Court in *Village* expressly held that these gradual onset claims are "injury" claims, they must necessarily be included in "all cases of injury" within the scope of the Worker's Compensation statute. R.C. 4123.84. A gradual onset injury, as defined in *Village*, is different from an occupational disease, as defined by statute. R.C.

4123.01(F) defines occupational disease as "a disease contracted in the course of employment, which by its causes and the characteristics of its manifestation or the condition of the employment results in a hazard which distinguishes the employment in character from employment generally, and the employment creates a risk of contracting the disease in greater degree and in a different manner from the public in general." In the case before us, the trial court granted the motion for a directed verdict on the occupational disease claim and denied the motion for a directed verdict on the gradual onset claim based on *Village*.

{¶ 23} A motion for directed verdict presents a question of law, and we therefore use a de novo standard of review. *Goodyear Tire v. Aetna Casualty,* 95 Ohio St. 3d 512, 769 N.E.2d 835 (2002). Civ.R. 50(A)(4) directs the court to grant a motion for directed verdict if the court, "after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." "The 'reasonable minds' test mandated by Civ.R. 50(A)(4) requires the court to discern only whether there exists any evidence of substantive probative value that favors the position of the nonmoving party." *Goodyear* at ¶ 3.

{¶ 24} In determining whether the motion for a directed verdict should have been granted on Warner's *Village* claim, we must determine whether Warner presented any evidence of substantive probative value to prove her claim. Evidence has "probative value" when it has the tendency to make the existence of any material fact more probable than it would be without the evidence. *See* Evid.R. 401 and Evid.R. 403. The testimony of Warner and her treating physician, Dr. Saunders, constitutes sufficient evidence, of

probative value, to prove that Warner's injury was caused by her working conditions. Although there was conflicting testimony on causation by the two physicians who testified, there was sufficient evidence for the jury to decide in Warner's favor by giving greater weight to her treating doctor's opinion. Accordingly, the trial court did not err in overruling the motion for a directed verdict on the *Village* claim.

{¶ 25} The Third Assignment of Error is Overruled.


**IV. The Jury Was Not Misled By the Court's Discretionary Decision to Not Inform the Jury of the Court's Dismissal of the Occupational Disease Claim**

{¶ 26} For its Fourth Assignment of Error, DMAX asserts as follows:

THE TRIAL COURT ERRED WHEN IT FAILED TO ADVISE THE JURY THAT A DIRECTED VERDICT HAD BEEN GRANTED REGARDING THE OCCUPATIONAL DISEASE THEORY, AND WHEN IT THEN REDACTED DR. WUNDER'S TESTIMONY

{¶ 27} Civ. R. 51(B) allows cautionary instructions at the commencement, and during the course, of the trial. In its discretion, a trial court may accept or refuse requested cautionary instructions relating to the jury's determination of dispositive issues. The appropriate use of cautionary instructions to a jury is within the trial court's discretion. *United States Fire Ins. Co. v. Addison*, 10th Dist. Franklin No. 76AP-756, 1977 WL 199996, *4 (Mar. 15, 1977). Discretionary decisions are unreasonable and constitute an abuse of discretion when they are not supported by a sound reasoning process. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 28}** We have concluded that "the law requires us to look at the totality of the jury charge in determining whether a portion of it is harmless or prejudicial*." Moreland v. Oak Creek OB/GYN, Inc.*, 2d Dist. Montgomery No. 20468, 2005-Ohio-2014, 970 N.E.2d 455, ¶¶ 38-39, citing *Smart v. Nystrom*, 119 Ohio App.3d 738, 743, 696 N.E.2d 268 (2d Dist. 1997). "If the instructions fairly and correctly state the law applicable to evidence presented at trial, reversible error will not be predicated on a mere possibility that the jury may have been misled." *Id.* at ¶ 38.

**{¶ 29}** The Supreme Court of Ohio recently discussed the role of a reviewing court in a challenge to jury instructions as follows:

> In ascertaining whether prejudicial error exists, the court is "bound by the disclosures of the record." *Makranczy v. Gelfand,* 109 Ohio St. 325, 329, 142 N.E. 688 (1924). To find that substantial justice has not been done, a court must find (1) errors, and (2) that without those errors, the jury probably would not have arrived at the same verdict. *Hallworth v. Republic Steel Corp.*, 153 Ohio St. 349, 91 N.E.2d 690 (1950), paragraph three of the syllabus. Even an erroneous jury instruction " 'may not be sufficiently prejudicial to justify a reversal.' " *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 186, 729 N.E.2d 726 (2000), quoting *Smith v. Flesher,* 12 Ohio St.2d 107, 114, 233 N.E.2d 137 (1967). To conclude that a party's substantial rights were materially affected, an appellate court must find that the jury charge was so misleading and prejudicial as to result in an erroneous verdict. *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.*, 18

Ohio St.3d 268, 274, 480 N.E.2d 794 (1985). Making such a determination requires a "thorough review of the entire transcript of proceedings before the trial court." *Hampel* at 186, 729 N.E.2d 726.

"A jury instruction must be considered in its entirety and, ordinarily, reversible error does not consist of misstatements or ambiguity in a part of the instruction." *Sech v. Rogers,* 6 Ohio St.3d 462, 464, 453 N.E.2d 705 (1983). "[W]e will not assume the presence of prejudice * * * but must find prejudice on the face of the record." *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457, 462, 709 N.E.2d 162 (1999). In addition, an appellate court must determine not only whether there was prejudice, but also "the degree of prejudice." *Id.* at 461, 709 N.E.2d 162. The jury instruction given in error must be "so prejudicial * * * that a new trial is warranted." *Id.*

*Hayward v. Summa Health Sys./Akron City Hosp.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶¶ 25-26.

{¶ 30} Based upon our review of the entire charge to the jury, we conclude that the jury instructions given by the trial court accurately and logically set forth the applicable law in this case. The jury was instructed to determine whether the facts supported a claim based on the *Village* criteria, by instructions that, "injury includes physical harm that develops over time as the gradual result of the injured employee's work on job-related duties." No instructions[2] were given that would have misled the jury into finding in

---

[2] OJI CV 427.01 provides standard instructions for Worker's Compensation cases with different options for different types of injuries including "non-scheduled occupational disease which means a disease contracted in the course of employment, which by its causes and the characteristics of its manifestation, or the condition of the employment, results in a hazard that distinguishes the employment in character from employment

Warner's favor based on an "occupational disease." Taken as a whole, the jury instructions are not misleading. The instructions direct the jury in a clear and concise manner on the findings necessary to render a verdict in Warner's favor, based on an accurate statement of the law on the correct issue pending in the case. We conclude that the failure to provide a cautionary instruction on the dismissed claim based on an "occupational disease" theory had no tendency to cause the jury to lose its way or to render an erroneous verdict. No abuse of discretion occurred when the court chose not to give a cautionary instruction to the jury about a claim that was not submitted to the jury.

{¶ 31} The Fourth Assignment of Error is Overruled.

## V. The Motion for Judgment Notwithstanding the Verdict or for a New Trial Was Properly Overruled

{¶ 32}  For its Fifth Assignment of Error, DMAX alleges as follows:

THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT DMAX'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE FOR NEW TRIAL

{¶ 33} Civ.R. 59 governs motions for a new trial:

Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: (1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an

---

generally, and the employment creates a risk of contracting the disease in greater degree and in different manner than the public in general."

aggrieved party was prevented from having a fair trial; (2) Misconduct of the jury or prevailing party.

**{¶ 34}** The decision whether to grant or deny a motion for a new trial is left to the discretion of the trial court. *Kademian v. Marger*, 2014-Ohio-4408, 20 N.E.3d 1176, ¶ 23 (2d Dist.), citing *Yungwirth v. McAvoy*, 32 Ohio St.2d 285, 286, 291 N.E.2d 739 (1972); *Zerkle v. Kendall,* 172 Ohio App.3d 468, 2007-Ohio-3432, 875 N.E.2d 652, ¶ 10 (2d Dist.). A trial court abuses its discretion when its decision is "unreasonable, arbitrary, or unconscionable." *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 19.

**{¶ 35}** DMAX asserts two arguments for its motion for a new trial. First, DMAX relies on the same grounds it raises in its fourth assignment of error. For the same reasons discussed above, we do not agree that the trial court abused its discretion by choosing not to advise the jury of the directed verdict that dismissed the occupational disease claim. DMAX also argues that a new trial is warranted because the verdict is not supported by the weight of the evidence. After reviewing the entire record, we conclude that in resolving conflicts in the evidence, the jury did not lose its way, thereby creating a manifest miscarriage of justice. The jury had the opportunity to see and hear all of the witnesses, and it was free to determine which testimony to credit. We defer to the jury's assessment of credibility. *Ward v. Govt. Emps. Ins. Co.*, 2d Dist. Montgomery No. 24884, 2012-Ohio-2970, ¶ 30. We find no abuse of discretion in the court's denial of the motion for a new trial.

**{¶ 36}** Civ. R. 50 governs motions for a directed verdict and motions for judgment notwithstanding the verdict. "A motion for judgment notwithstanding the verdict presents

an issue of law." *Pytel v. Crenshaw*, 2d Dist. Montgomery No. 25487, 2013-Ohio-3552, ¶ 15, citing *O'Day v. Webb*, 29 Ohio St.2d 215, 280 N.E.2d 896 (1972). "Though the court does not weigh the evidence or consider the credibility of the witnesses, the court must evaluate the evidence for its sufficiency in relation to the legal standard governing the claim or defense which the motion involves. Furthermore, being a finding as a matter of law, the trial court's judgment granting or denying the motion is reviewed on appeal de novo." *Id.* In a de novo review, the trial court's decision is not granted any deference by the reviewing court. *Lasley v. Nguyen*, 172 Ohio App.3d 741, 2007-Ohio-4086, 876 N.E.2d 1274, ¶ 18 (2d Dist.).

{¶ 37} In its motion for a judgment notwithstanding the verdict, DMAX relied on the same grounds it raises in its first and second assignments of error. DMAX claims that because Dr. Saunders's testimony was unreliable and deficient, it should have been excluded, and that without that testimony, the verdict must be set aside. For the same reasons discussed above, we do not agree that Dr. Saunders's testimony was unreliable or deficient. The challenges to Dr. Saunders's testimony go to its weight, not its admissibility. For the reasons stated above, we have already concluded that the jury had sufficient evidence to decide in Warner's favor by giving greater weight to her treating doctor's opinion, which was properly admitted. We conclude that the trial court did not err by denying the motion for a judgment notwithstanding the verdict.

{¶ 38} The Fifth Assignment of Error is Overruled.

## VI. Conclusion

{¶ 39} All assignments of error having been overruled, the judgment of the trial

court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Gloria P. Castrodale
Mike DeWine
Lisa Miller
David C. Korte
Michelle D. Bach
Joshua R. Lounsbury
Hon. Richard Skelton
(successor to Judge Frances E. McGee)