[Cite as *State v. Umstead*, 2017-Ohio-698.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 16 CA 004 |
| MATTHEW B. UMSTEAD | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:          Criminal Appeal from the Court of Common
                                                        Pleas, Case Nos. 15CR106 and 16CR006


JUDGMENT:                                      Affirmed


DATE OF JUDGMENT ENTRY:        February 24, 2017


APPEARANCES:

For Plaintiff-Appellee                        For Defendant-Appellant

STEVE KNOWLING                          DAVID M. HUNTER
PROSECUTING ATTORNEY            244 West Main Street
F. CHRISTOPHER OEHL               Loudonville, Ohio  44842
ASSISTANT PROSECUTOR
164 East Jackson Street
Millersburg, Ohio  44654

*Wise, J.*

**{¶1}** Defendant-Appellant Matthew B. Umstead appeals from his conviction, in the Court of Common Pleas, Holmes County, on several felony counts connected to the illegal manufacture of methamphetamine. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

**{¶2}** On November 23, 2015, Sgt. Timothy Stryker, a narcotics detective with the Holmes County Sheriff's Office, received information concerning a purchase of pseudoephedrine from the Ritzman Pharmacy in Shreve, Ohio. The purchaser was Donnie Spurlock, who was known by the detective to periodically stay at appellant's home on West Jackson Street in Holmesville, Ohio. Based on the pharmacy information, Sgt. Stryker decided to conduct visual surveillance of appellant's residence. Stryker observed that appellant's vehicle was not at the residence. After a while, Stryker returned to the Sheriff's Department, but he received a second alert that Spurlock had also purchased pseudoephedrine at another store, this time the Rite Aid Pharmacy in Wooster. Stryker went back to again set up surveillance at appellant's home. At that time, he observed appellant come home, with Spurlock in the vehicle.

**{¶3}** At about 7:25 PM on the same date, after Stryker had returned to his regular uniformed patrol activities, he and a fellow officer, Detective Mullet, drove down West Jackson and observed a fire in the back yard of appellant's residence. He saw "black smoke" coming from the fire and suspected it was not wood burning. Tr. at 107. He approached the back of the residence and approached co-defendant Jason White, who was putting more items into the fire. White indicated he was just "burning some trash." Tr. at 109. Stryker observed a trash bag next to White as he approached him. The bag was

later found to contain used pseudoephedrine packs. White indicated that appellant was in the house and left to get him. Stryker observed an odor of chemical coming from the fire and was able to see a pseudoephedrine box that had not caught fire yet. Stryker decided to secure the property to get a search warrant. While he was walking on the property, he observed an odor he associated with the manufacturing of methamphetamine in the narrow area between the "man cave" (a shed behind the house) and the back of the detached garage. According to a photographic exhibit provided by the State, the distance between the northeast corner of the "man cave" shed and the northeast corner of the house is seventy-five feet, making the man cave about forty feet behind the rear of the house, abutting the back wall of the garage. Shortly thereafter, back-up officers entered the garage.

{¶4} Spurlock in the meantime came out of the "man cave" and was cuffed by Deputy Strother. Deputies then entered the man cave and discovered an active meth lab. The lab was dismantled. A search warrant was obtained for the property at about 10:25 PM. During execution of the warrant in the home, they found "baggies of a crystal-like white powdered" substance in a safe in appellant's bedroom. Tr. at 125. The powder was later analyzed by BCI and determined to be methamphetamine. Tr. at 172.

{¶5} The deputies took appellant into custody that evening, after White had gone into the house to get him. Stryker interviewed appellant on video at the Holmes County Jail at approximately 1:00 AM on November 24, 2015.

{¶6} On December 17, 2015, Sgt. Stryker returned to appellant's residence based on a telephone call from appellant's mother, who indicated she had found a gun on the back of the headboard in appellant's room.

**{¶7}** Appellant was thereafter charged by joint indictments with at least eight felony counts stemming from the aforesaid investigatory activity. Following a pre-trial renumbering entry by the trial court, the counts were set forth as follows:[1]

**{¶8}** Count 1 - Illegal Manufacture of Drugs (R.C. 2925.04(A)); Count 2 - Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs (R.C. 2925.041(A)); Count 3 - Aggravated Possession of Drugs (R.C. 2925.11(A)); Count 4 - Tampering with Evidence (R.C. 2921.12(A)(1)); Count 5 - Endangering Children (R.C. 2919.22(B)(6)); Count 6- Endangering Children (R.C. 2919.22(B)(6)); Count 7- Having Weapons while Under Disability (R.C. 2923.13(A)(2)); and Count 8 - Aggravated Possession of Drugs (R.C. 2925.11(A)).

**{¶9}** The matter proceeded to a jury trial on April 7 and 8, 2016. Appellant was ultimately found guilty of all eight counts; however, he was found not guilty of the firearm specifications as alleged on four of the counts.

**{¶10}** Via a judgment entry issued on April 11, 2016, appellant was sentenced *inter alia* to a prison term of sixteen years and six months.

**{¶11}** On May 9, 2016, appellant filed a notice of appeal. He herein raises the following three Assignments of Error:

**{¶12}** "I. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT APPELLANT'S CONVICTIONS AND/OR THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

---

[1] Based on our reading of the trial court file, the numbering of the counts as provided in the appellate briefs is partially erroneous.

**{¶13}** "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS UNDER CRIM.R 29(A) AT THE CLOSE OF ALL EVIDENCE.

**{¶14}** "III. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."

I.

**{¶15}** In his First Assignment of Error, appellant contends his convictions tied to the methamphetamine lab at the back of his property were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree.

*Sufficiency Claim*

**{¶16}** The gist of appellant's claim concerning the sufficiency of the evidence is his challenge to the State's theory that appellant acted in complicity with Spurlock and/or White to operate the methamphetamine lab in the "man cave" shed building at the back of the garage, urging that at least six of the counts centered on the meth lab found in the man cave.

**{¶17}** In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

**{¶18}** Appellant directs our attention to the "aiding or abetting" subsection of Ohio's complicity statute, *i.e.*, R.C. 2923.03(A)(2). This portion of the statute reads in pertinent part as follows: "No person, acting with the kind of culpability required for the commission of an offense, shall *** [a]id or abet another in committing the offense." Under

R.C. 2923.03(F) of the complicity statute, "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished *as if he were a principal offender.*" (Emphasis added).

**{¶19}** We have recognized that in order to support a conviction for complicity by aiding or abetting under R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal, and such intent may be inferred from the circumstances surrounding the crime. *State v. Shrider,* 5th Dist. Licking No. 07 CA 111, 2008–Ohio–3648, ¶ 41, citing *State v. Johnson* (2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus. Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not aiding or abetting. *State v. Mullins* (1986), 34 Ohio App.3d 192, 200, 517 N.E.2d 945, citing *Columbus v. Russell* (1973), 39 Ohio App.2d 139, 140, 316 N.E.2d 897.

**{¶20}** In the case *sub judice*, appellant submits, and we agree, that six of the counts could be reasonably categorized as directly related to the operation of a meth lab in the shed or "man-cave" on his residential property in Holmesville. The State's essential theory at trial was that appellant acted in complicity with Spurlock and White in running a meth lab operation at that site. The trial court correspondingly gave an instruction to the jury on complicity, both on "aiding or abetting" and "soliciting or procuring." Tr. at 263-264. Appellant presently argues there was no evidence that he directly participated in the meth lab and no evidence that he supported, assisted, encouraged, cooperated with, advised, or incited Spurlock and/or White in the commission of the charged crimes, and no evidence that the defendant shared their criminal intent. According to appellant, the only

significant evidence before the jury was: 1) that appellant was traveling to Wooster for a specified purpose, other than to stop at the pharmacies, and the other two rode along; 2) they stopped at two pharmacies, but there was no indication that appellant had knowledge of what was purchased or why they wanted to stop at those locations; 3) the meth lab was found at the back of his property in the man cave, and even though he was in his home, there was no direct indication that he was aware of the same; 4) White was burning trash that contained appellant's garbage and other items purchased by White and Spurlock.

**{¶21}** However, Ohio law recognizes that circumstantial evidence is sufficient to prove the essential elements in a criminal case. *State v. Willey,* 5th Dist. Guernsey No. 98 CA 6, 1999 WL 3962, citing *State v. Hopfer* (1996), 112 Ohio App.3d 521, 558, 679 N.E.2d 321. "The only notable exception to this principle is where the inference between the facts proven and the facts sought to be proven is so attenuated that no reasonable mind could find proof beyond a reasonable doubt." *Id.,* citing *State v. Griffin* (1979), 13 Ohio App.3d 376, 377-378, 469 N.E.2d 1329. In the present case, while the evidence indeed suggested that appellant did not exit the vehicle when taking his cohorts to the pharmacies where the pseudoephedrine purchases were made, appellant nonetheless took them to two different outlets more than 20 miles apart in a single day. *See* Tr. at 138. Sergeant Stryker described for the jury the "Implex" system used by drugstores and law enforcement to track and record pseudoephedrine purchases as a means of controlling potential use in illegal methamphetamine manufacturing. Tr. at 101-102. He described the process of "smurfing," where a buyer of pseudoephedrine attempts to get around the regulations limiting individual purchases by getting another person to buy the item in

exchange for drugs or cash. Tr. at 102. Stryker also testified that appellant's man-cave, wherein the meth lab was discovered, was no more than seventy-five feet behind appellant's house, and on the evening in question was emitting a noxious smell. Tr. at 111-112.

**{¶22}** Therefore, upon review, we find sufficient circumstantial evidence existed for reasonable fact finders to conclude beyond a reasonable doubt that appellant was complicit in the offenses pertaining to illegal drug manufacturing, assembly, and possession, as well as the endangering children counts. We thus hold said convictions were supported by the sufficiency of the evidence.

**{¶23}** Appellant also challenges the sufficiency of the evidence regarding the offense of tampering with the evidence. He contends he was charged for same based on the "burning of the trash," despite the claimed lack of evidence that he participated in said burning. The evidence presented was essentially that White was observed by the deputies burning the trash "to start a fire." However, given that the testimony revealed the "trash" awaiting the fire included several opened pseudoephedrine packets and that the burning was being done on appellant's property, the site of the meth lab, while appellant was home, we find sufficient evidence was presented for reasonable fact finders to convict appellant of complicity on the count of tampering with evidence.

**{¶24}** Appellant lastly contends his conviction for having weapons under disability was not supported by sufficient evidence. The gun in question was found by appellant's mother from several days to a couple of weeks after appellant had been arrested and the deputies had searched his residence. It was hidden behind the headboard in appellant's bedroom, the same room in which a safe containing methamphetamine had been

discovered on November 23, 2015. Appellant asserts that during the intervening time, others had access to his home, including an ex-wife who apparently began living there with the children, and there were no fingerprints on the weapon and no registration connecting same to appellant. Finally, appellant points out that the jury found him not guilty of the firearm specifications with regard to four of the other counts, but found him guilty of having a weapon under disability for a gun that may not have even been in the home at the time appellant was arrested.

{¶25} However, upon review of the record and transcript in a light most favorable to the prosecution, we find that reasonable finders of fact could have found appellant guilty on the weapons under disability charge, beyond a reasonable doubt.

*Manifest Weight Claim*

{¶26} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

{¶27} In the case *sub judice*, the State's chief witness, Sgt. Stryker, testified that he has sixteen years' experience with the Holmes County Sheriff's Department and has had specific training in dismantling meth labs and dealing with the hazardous materials

associated with such activity. Tr. at 99. He is presently "strictly assigned to narcotics doing undercover work along with seeking and looking for drug traffickers and people who possess narcotics." Tr. at 100. He has personally taken down more than 400 meth labs over a four-county area since 2011. *Id.* When he observed the backyard fire at appellant's residence, he noticed the black smoke and "a very strong chemical odor coming from it." Tr. at 110.

**{¶28}** The State also called, among other witnesses, representatives from Ritzman Pharmacy and Rite Aid, although appellant points out that neither of these individuals nor the surveillance video provided to Sgt. Stryker identified appellant as the person who actually purchased the pseudoephedrine. Tr. at 90, 97. The videos from Rite-Aid instead show Spurlock and White in the store, not appellant. *See* Tr. at 138-139, 149. During the police interview video, played for jury, appellant acknowledged that Spurlock and White rode along with him when he went to Wooster, supposedly to look at a dirt bike. He also acknowledged that they went to Ritzman Pharmacy and Rite Aid, but that he insisted he did not go into the stores. Appellant also stated on the video that he was inside his home before officers arrived on November 23, 2015, but he had no knowledge of what Spurlock was doing at that time. He indicated that White simply wanted to burn the trash to start a fire. However, as the State notes in response, appellant tried to cover up Spurlock's presence at the property, and he has asserted the theory of lack of knowledge of the meth lab operation on the property despite the deputies' recollection of the strong smell of an active meth cook and the presence of the man cave just forty feet behind the rear of the house.

{¶29}    Upon review under the standard of *Martin,* we find the jury did not clearly lose its way and create a manifest miscarriage of justice in concluding appellant was more than just an innocent bystander of the drug manufacturing activities on his property, but instead participated as an aider and abettor. Appellant's convictions thus were not against the manifest weight of the evidence.

{¶30}    Appellant's First Assignment of Error is therefore overruled.

II.

{¶31}    In his Second Assignment of Error, appellant contends the trial court erred in denying his Crim.R. 29 motion for acquittal at the close of all the evidence. We disagree.

{¶32}    An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. *See State v. Carter* (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 1995-Ohio-104. Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks*, *supra*.

{¶33}    Based on our conclusions as set forth in our analysis of the first portion of appellant's First Assignment of Error, we hold the trial court did not err in denying appellant's motion for acquittal under Crim.R. 29.

{¶34}    Appellant's Second Assignment of Error is therefore overruled.

III.

{¶35}    In his Third Assignment of Error, appellant contends he was denied the effective assistance of trial counsel. We disagree.

**{¶36}** Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

**{¶37}** However, trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. In addition, the United States Supreme Court and the Ohio Supreme Court have held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697.

*Claim of Ineffective Assistance re: Lack of Challenge to the Search of Home*

**{¶38}** We first consider appellant's claim that his trial counsel was ineffective for failing to file a motion to suppress or otherwise challenge the search of his home.

{¶39} The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." The Fourth Amendment further states that "*** no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The United States Supreme Court has held that at the "very core" of the Fourth Amendment stands the right of a person to retreat into his or her own home and "there be free from unreasonable governmental intrusion." *See Payton v. New York* (1980), 445 U.S. 573, 589–590, 100 S.Ct. 1371, 63 L.Ed.2d 639, quoting *Silverman v. United States* (1961), 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734.

{¶40} However, a failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted. *State v. Shepherd*, 5th Dist. Richland No. 14CA63, 2015-Ohio-4330, ¶ 39, citing *State v. Robinson,* 108 Ohio App.3d 428, 433, 670 N.E.2d 1077 (3rd Dist.1996).

{¶41} Appellant at this point appears to focus solely on the search of the house, as opposed to the man cave. He concedes that the deputies obtained a search warrant before going into the house, but he contends said warrant was insufficiently based on the averment of the smell of chemicals coming from the garage and/or man cave.

{¶42} We note R.C. 2933.33(A) states that "[i]f a law enforcement officer has probable cause to believe that particular premises are used for the illegal manufacture of methamphetamine, for the purpose of conducting a search of the premises without a warrant, the risk of explosion or fire from the illegal manufacture of methamphetamine causing injury to the public constitutes exigent circumstances and reasonable grounds to

believe that there is an immediate need to protect the lives, or property, of the officer and other individuals *in the vicinity* of the illegal manufacture." (Emphasis added). In the case *sub judice*, Sgt. Stryker made the decision to first secure and dismantle the meth lab located in the man cave, and then obtain a search warrant for the house. *See* Tr. at 115-116. Upon review, given the recognition in Ohio law of the exigencies connected to illegal methamphetamine manufacturing, we find no demonstration that a suppression challenge to the warrant-based search of appellant's house would have been successful, and we therefore find no merit in his claim of ineffective assistance in this regard.

*Claim of Ineffective Assistance re: Failure to Object to Alleged Hearsay*

**{¶43}** Appellant next urges that his trial attorney was ineffective for failing to object to alleged hearsay statements during the trial. We first note it is well-established that "[c]ompetent counsel may reasonably hesitate to object [to errors] in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial." *State v. Rogers,* 9th Dist. Summit No. 19176, 1999 WL 239100, citing *State v. Campbell* (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (internal quotations omitted). However, in this instance appellant's brief merely makes vague reference to "statements made by Mr. Spurlock and Mr. White to law enforcement and a report received from BCI." Appellant's Brief at 15. We find appellant's argument to be unpersuasive in light of the requirements of App.R. 16(A)(7). *See State v. Nelson-Vaughn,* 5th Dist. Stark No. 2015CA00124, 2016-Ohio-1426, ¶ 67.

*Claim of Ineffective Assistance re: Failure to Challenge Prior "Bad Acts" Evidence*

**{¶44}** Appellant next challenges his trial counsel's failure to attempt to block Sgt. Stryker's testimony regarding his prior contact with appellant and his familiarity with

appellant's vehicle, as well as Deputy Strother's testimony that she was familiar with appellant and his family. Appellant also points out the presentation to the jury of a video interview of appellant by Stryker at the jail wherein there is additional discussion by the officer regarding his past contact with appellant.

**{¶45}** Evid.R. 404(B) states as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ***."

**{¶46}** In the case *sub judice*, in regard to evidence of the generic "familiarity" the two officers may have had with appellant, we conclude appellant's trial counsel's decision not to invoke the aforesaid evidentiary rule did not fall below an objective standard of reasonable representation. In regard to the playing of the video interview between appellant and Sgt. Stryker, we conclude, as urged by the State in its response brief, that the decision not to object was likely trial strategy to allow the jury to see appellant's denial of any wrongdoing and any involvement in a meth lab, without having appellant take the stand as a witness. Appellant's trial counsel's decision in this regard thus also did not fall below an objective standard of reasonable representation.

*Claim of Ineffective Assistance re: Eliciting Alleged Prejudicial Testimony*

**{¶47}** Appellant also argues that his trial counsel was ineffective for asking questions of Sgt. Stryker during cross-examination that resulted in the officer revealing that he had received alerts on prior occasions that appellant had been involved in purchasing pseudoephedrine. *See* Tr. at 148-149.

**{¶48}** In addressing such a claim, we remain mindful that "[a] defendant is entitled to a fair trial but not a perfect one." *See State v. Bleigh,* Delaware App.No. 09–CAA–03–0031, 2010–Ohio–1182, ¶ 133, quoting *Bruton v. United States* (1968), 391 U.S. 123, 135–136, 88 S.Ct. 1620, 20 L.Ed.2d 476 (internal quotations omitted). Furthermore, the scope of cross-examination is considered part of trial strategy, and debatable trial tactics do not establish ineffective assistance. *State v. Conway,* 109 Ohio St.3d 412, 848 N.E.2d 810, 2006–Ohio–2815, ¶ 101.

**{¶49}** The primary purpose of cross-examination is to test the accuracy, truthfulness, soundness, and credibility of testimony given on direct examination. *Baird v. Cincinnati Transit Co.,* 110 Ohio App. 94, 99, 168 N.E.2d 413 (1st Dist.1959). We have the benefit of hindsight, but during the heated ebb and flow of the typical cross-examination process, a reasonable defense attorney may have to occasionally risk venturing into areas that could unexpectedly result in responses unfavorable to his or her client. Under the circumstances herein presented, we find appellant has failed to demonstrate a reasonable probability that but for counsel's alleged error in cross-examining the officer, the outcome of the trial would have been different.

*Conclusion*

**{¶50}** Having considered the foregoing claims, we find appellant was not deprived of the effective assistance of trial counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Ohio Constitution.

**{¶51}**    Appellant's Third Assignment of Error is therefore overruled.

**{¶52}**    For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Holmes County, Ohio, is hereby affirmed.

By: Wise, J.

Hoffman, P. J., and

Delaney, J., concur.

JWW/d 0126