DECISION AND JUDGMENT ENTRY
{¶ 1} Ernest Munday appeals the trial court's judgment, which directed a verdict in favor of appellee Southern Ohio Coal Company since the evidence indicated that Munday suffered from a bout of depression before 1996. Thus, the court found that reasonable minds could only conclude that appellant's 1996 work-related injury did not proximately cause him to subsequently suffer a major depressive disorder. Because appellant's expert witnesses acknowledged the prior depressive episode but still opined that his work-related injury proximately caused his major depressive disorder, and because issues regarding the weight to be afforded expert testimony are ordinarily questions for the trier of fact, we conclude that the trial court should not have taken the case from the jury. Therefore, we reverse its judgment.
 {¶ 2} In September of 2002, appellant filed a claim for benefits. Appellant alleged that he was entitled to participate in the workers' compensation system for an additional condition of major depressive disorder that arose from a previously allowed claim sustained on August 22, 1996. After his claim was denied administratively, he appealed the decision to the court of common pleas.
 {¶ 3} At the trial, Dr. Barbara Baisden, who examined appellant, stated that she believed appellant was suffering from major depression and that he initially had experienced it in the early 1990s when he started experiencing migraines: "I felt that he did suffer major depression. He experienced that early in the '90s after, you know — with migraines and kind of got — you know, apparently got over that. So I called it — I termed it recurrent because there was one prior episode. That's the only one that I know of. And I termed it moderate. Not severe. More than mild."
 {¶ 4} She opined that his current depression "definitely is directly related to the original injury and then further aggravated and compounded by subsequent re-injury, and just the cumulative effects of everything he's — that's happened to him physically and work wise since then." She explained that the August 22, 1996 back injury "was the point at which he began to become depressed and then became increasingly depressed over time and with reinjury" and that the 1996 back injury "was the immediate cause of the depressive condition that subsequently became major." She noted that appellant had sought treatment for depression in 1994 as a result of the pain from his migraines and that while the migraines continued, "the depression didn't necessarily continue to be a problem for, until some years later."
 {¶ 5} Appellant testified that he was never told that he had depression back in the early 1990s, but he stated that the migraines made him "feel pretty worthless." He further candidly admitted that he felt depressed before August of 1996.
 {¶ 6} Dr. Bal Bansal, who was appellant's treating physician, testified: "[Appellant] was able to control his depression by himself with his own psychological phenomena, which he has learned over time throughout his life, because he was in a constant pain involving his neck, the torticollis, with the migraines. And then after he injured his lower back, he felt like he's not a man anymore. He basically . . . His both part of the neck and lower back is gone. He won't be able to function as much as he did in the past. So, I think that was a triggering event to trigger a major depressive disorder." Dr. Bansal thus opined that the August 22, 1996 back injury was a proximate cause of his major depressive disorder.
 {¶ 7} At the close of appellant's case, appellee moved for a directed verdict, which the trial court granted by concluding: "[A]ll of the evidence presented at trial on behalf of the Plaintiff specifically establishes that `major depressive disorder' was deemed attributable to the Plaintiff during the period of time pre-dating the Plaintiff's work-related injury on August 22, 1996 * * *. In particular, Dr. Barbara Baisden specifically opined that the Plaintiff suffered from said condition prior to August 22, 1996. Dr. Bal Bansal concurred with her opinion. And the Plaintiff, who acknowledged that he was not qualified to express an opinion about the medical diagnosis, confirmed that from his perspective he had suffered from the condition of depression prior to August 22, 1996."
 {¶ 8} Appellant timely appealed the trial court's judgment and raises the following assignment of error: "The trial court erred in sustaining the Motion for Directed Verdict on behalf of the Defendant, Southern Ohio Coal Company."
 {¶ 9} We review a trial court's decision regarding a motion for directed verdict de novo. See O'Day v. Webb (1972),29 Ohio St.2d 215, 280 N.E.2d 896, paragraph three of the syllabus. "A motion for directed verdict * * * does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence." Id.; see, also, Wagner v. Roche Laboratories (1996),77 Ohio St.3d 116, 119, 671 N.E.2d 252; Goodyear Tire Rubber Co. v.Aetna Cas. Sur. Co. (2002), 95 Ohio St.3d 512, 514,769 N.E.2d 835.
 {¶ 10} Under Civ.R. 50(A)(4), a trial court may grant a motion for directed verdict if, after construing the evidence most strongly in favor of the party against whom the motion is directed, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." "The `reasonable minds' test mandated by Civ.R. 50(A)(4) requires the court to discern only whether there exists any evidence of substantive probative value that favors the position of the nonmoving party." Goodyear Tire, 95 Ohio St.3d at 514. A court must deny a motion for directed verdict if substantial competent evidence supports the position of the non-moving party, such that reasonable minds could reach different conclusions based upon the evidence. Apel v. Katz (1998), 83 Ohio St.3d 11,19, 697 N.E.2d 600; Wagner v. Roche Laboratories (1996),77 Ohio St.3d 116, 119, 671 N.E.2d 252.
 {¶ 11} A workers' compensation claimant seeking the right to participate for an injury must show the existence of a direct and proximate causal relationship between the industrial accident and the claimed injury or disability. See Zavasnik v. Lyons Transp.Lines., Inc. (1996), 115 Ohio App.3d 374, 377, 685 N.E.2d 567; see, also, State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452, 619 N.E.2d 1018; Murphy v. Carrollton Mfg. Co.
(1991), 61 Ohio St.3d 585, 587, 575 N.E.2d 828. An additional allowance for a mental condition is compensable as a residual or "flow through condition"[1] only if it arises out of a compensable physical injury. See Grant v. Ohio Dept. of LiquorControl (1993), 86 Ohio App.3d 76, 84-85, 619 N.E.2d 1165. In order to receive benefits for flow through injuries, a claimant must establish that the previously allowed injury was the proximate cause of the new injury. See Click v. S. OhioCorrectional Facility, 152 Ohio App.3d 560, 2003-Ohio-2208,789 N.E.2d 643; Jones v. Medical Mut. of Ohio, Cuyahoga App. No. 82924, 2004-Ohio-746 (citing Fox v. Indus. Comm. (1955),162 Ohio St. 569, 125 N.E.2d 1, paragraph one of the syllabus).
 {¶ 12} In this case, both doctors opined that appellant's August 22, 1996 back injury proximately caused his major depressive disorder. However, both doctors further recognized that before the August 22, 1996 injury, appellant had sought treatment for depression. The trial court concluded that because appellant suffered from depression prior to his August 22, 1996 injury, no reasonable jury could find that that injury caused his major depressive disorder.
 {¶ 13} A review of the transcript reveals that all of appellant's witnesses agree that appellant suffered from some type of depression before his August 22, 1996 injury. Dr. Baisden indicted that the prior episode of depression was "not severe." She characterized it as "moderate" and that he "apparently got over that." Both doctors characterized his current condition as "major depression" and concluded that it was proximately caused by injury in 1996. The doctors state, however, that the August 22, 1996 injury and the subsequent pain it caused exacerbated his depression. The trier of fact should have been entitled to review the evidence and resolve the apparent discrepancy as to what triggered appellant's major depressive disorder. See, e.g.,State v. Nemeth (1998), 82 Ohio St.3d 202, 210, 694 N.E.2d 1332
(stating that the credibility of appellant's experts' conclusions and the relative weight they should enjoy are determinations left to the trier of fact). The trier of fact should determine whether appellant's major depressive disorder preceded the 1996 injury or whether it arose as a result of the 1996 injury. Because the trial court erroneously directed a verdict in appellee's favor, we reverse the court's judgment and remand for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that Appellant recover of Appellees costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion.
Evans, J.: Not Participating.
[1] A "flow-through" injury is "* * * one developing in a body part not originally alleged per R.C. 4123.84(A)(1)." Dent v. AT T Technologies, Inc. (1988), 38 Ohio St.3d 187, 189,527 N.E.2d 821; see, also, Specht v. BP AM. Inc. (1999),86 Ohio St.3d 29, 30, 711 N.E.2d 225, 226. A flow-through injury is distinguished from an "additional" condition: "An additional condition is a new condition occurring in a body part for which proper written notice has already been given in the original claim." Lewis v. Trimble (1997), 79 Ohio St.3d 231, 237,680 N.E.2d 1207.